Good morning, Your Honors. William Taggart appearing on behalf of Appellant Catherine Nunez. I'm going to start with a little history lesson. As this Court is aware, the jurisdiction of the Tax Court over 6015 F has a checkered history. In 1998, the so-called Innocent Spouse Statute relief from joint and several liability was amended to create three prongs, 6015 B, 6015 C, and 6015 F. 6015 F is the portion that is of the statute that is an issue in this case. That is a very simple provision that grants discretion to the Internal Revenue Service to grant relief from joint and several liability to a requesting spouse when it would be inequitable not to do so. 6015 E provides for the appeal of administrative determinations by the Internal Revenue Service to the Tax Court for review. 6015 B and C are cases that require that there be a deficiency to bring that action. 6015 B and C are instances in which a requesting spouse is entitled to relief if the conditions for relief are met, conditions specified in 6015 B and C. If relief is denied administratively, however the case arises, it can be appealed to the Tax Court. The important part of that is B and C provide entitlement to relief. Now, in 1998, when 6015 F was enacted, initially the Internal Revenue Service and the Tax Court took the position that there was no jurisdiction to review an administrative determination. Judge Rui in Ewing and the Tax Court decided that the Tax Court, in fact, was intended to have jurisdiction, took jurisdiction over a stand-alone case, a stand-alone appeal, Gwen Ewing's appeal, and determined not only had jurisdiction, but actually granted relief. That case was appealed to this Court, and this Court determined that there was no review, authority to review a stand-alone 6015 F case in the initial enactment. The statute was amended and... You're not anywhere near close to the... I'm sorry? You're taking a long time to get to the issues in this case. Okay, I'll skip right ahead. It was amended, jurisdiction was granted, and any number of cases have now been appealed through the Tax Court, appealed into the circuits. This case is unique because between the date of the administrative denial of relief to Catherine Duniaz, the Internal Revenue Service determined that she was entitled to relief. Well, they didn't exactly determine that. They determined that they would honor the fact that they earlier had said that she was. I'm sorry, Mr. ---- I mean, they didn't exactly say she was entitled to it. They said that they weren't going to oppose it because they had earlier said they were going to grant it, so they had granted it. Well, there's a... But they didn't, in fact, grant it. I mean, that's what's weird about it. They were going to support her being able to get it, but they didn't actually sign off on her getting it. Well, no, they initially indicated they were going to grant relief. Then they decided that her ex-husband wasn't given an opportunity to... I understand. I mean, at the time after the court proceedings began. They told the court that they were willing to grant her the relief because they said they had earlier or had at one point said they would. But they never actually executed any document where granted, revoking the earlier denial and giving her relief. I understand that, but they did execute a document that denied relief. That was appealed to the tax court, and for whatever reason, the Internal Revenue Service changed its mind and decided she was entitled to relief. At that point in time, there ceased to be a dispute pending before Judge Haynes because the only issue on appeal of the 6015F case is the question of the denial of relief administratively by the Internal Revenue Service, the right of the ex-husband to participate in those proceedings. But you didn't enter into a stipulation, right? There was not a stipulation of judgment, a settlement. You didn't go to the judge and say, Judge, there's no reason for you to proceed here. We've settled this. I think that all of that came about simply because no one knew what to do in an instance in which between the date of the administrative proceedings denying relief and the time it took to get a settlement, there was no reason to go to the judge and say, Judge,  And I think that's the reason why the case was not settled. I thought it was because there was some understanding, perhaps based on a tax court case, that because the other spouse was – had intervened, there couldn't be a settlement. No. The right of the non-requesting spouse to intervene in a tax court is really only as an interested party to support the position of the Internal Revenue Service. But I thought there was a tax court case suggesting that you could not, in fact, settle the case without them. No. Am I wrong about that, there's no such case? No, not that I'm aware of. The easy thing to do would have been for the Petitioner and the Internal Revenue Service to move to dismiss the appeal on the grounds that there was no longer a dispute pending. And the intervening spouse has no right. He's an interested party, but he's not a participant in the dispute. Given that the tax court has, after our Wilson decision, de novo review and trial de novo rights, then effectively the tax court is independent of the Commissioner. So doesn't the tax court have the right to go ahead and examine this thing, even if two of the parties want to settle it? I don't believe it does, because it is still just an appeal of an administrative decision. The Wilson case, both the Wilson case and the other cases referred to are both 6015C cases where there is, the de novo review is a review of the entitlement to relief. 6015F, in a pure freestanding F case, is simply an exercise of administrative discretion. And the only limitation on it is that the Internal Revenue Service has the discretion to relieve a requesting spouse from liability in an instance when it would be inequitable not to do so. That was the issue, and I believe Judge Haynes decided it incorrectly, because no one knew procedurally how to dispose of the case at a point that there was no dispute pending. As I pointed out in the brief, the same result would have occurred if Catherine Nunez had decided she no longer wanted to pursue the appeal. There would no longer have been a dispute, and the adverse decision administratively would have stood. The point, I think, the real issue is that in a freestanding 6015F case, the plaintiff has the discretion to review the case. And that was the case in the 6015F case as well. They write the first paragraph. And both the ‑‑ I understand that, but that case reviewed the contours of ‑‑ The Texas court's right to review. Right. But it was a case where it was still disputed between ‑‑ Well, I understand that problem, but the whole thing is that after Wilson, the tax court is ‑‑ we have confirmed what the tax court itself has said, which is that it is independent of the commissioner. It's not simply a court reviewing things. It gets to decide the whole thing all over again by itself. I agree with that, that it has jurisdiction, but it still must have a dispute. A dispute between the ‑‑ There's a case called Corson v. CIR, which is the one I was referring to, which appears to say that the tax court is not going to allow a settlement when there is a responding spouse in the case. But that was a 6015C case, Corson's. So? But that's ‑‑ the difference is there's a entitlement to relief in B and C. In F, it is strictly an exercise of administrative discretion. Yes, but then there's Wilson cases, as Judge Bibas has been saying, which doesn't appear to treat it that way. Which, I understand, I don't think ‑‑ Judge Bibas wrote a very lengthy and involved dissent on that question, and maybe it was wrong, but there it is. Well, the dissent wasn't wrong. I didn't say the dissent was wrong. The opinion was wrong. I think that the de novo review does not extend to examination of a dispute when no dispute continues. And I will give you a minute in rebuttal. But one thing, just clarifying for me, is that although we held that the ‑‑ I don't know what the term is, but the other spouse does not have appellate rights, doesn't have standing. That seems very questionable to me, too, because I gather that the reason for allowing this participation is that with the other spouse out of the picture with regard to joint and several liability, he's more likely to have to pay up more ‑‑ the tax ‑‑ I believe that that is correct, both to support the ‑‑ So he certainly has an interest to it. We held that it is enough for standing to appeal, but once he's in the case properly as an intervener, he certainly has an interest. He is an interested party. He's interested in the outcome, but he is not a party. But not simply as a bystander. He's not just a little bystander. No, not as a bystander. He's an interested party because he has an interest in the outcome, but he is not a party to the underlying dispute, just as he has a right ‑‑ Once he has intervened in the case according to the statute, properly intervened and he's in the litigation, he's now a party to the litigation. That's what intervention means. He is a party to the lawsuit. He is not a party to the dispute. In that, his liability is unchanged. All right. We will give you a minute in rebuttal. Thank you. Thank you. Good morning. My name is John Schuman, and I represent the Commissioner of Internal Revenue in this case. In this case, the tax court had jurisdiction, subject matter jurisdiction, at the outset of the case, and that jurisdiction never lapsed. It retained that jurisdiction throughout the litigation. The tax court is a court of limited jurisdiction, and its jurisdiction is set out by statute. So the first inquiry is to determine whether jurisdiction was invoked to begin with. And the parties are in agreement here that it was. The statutory prerequisite for jurisdiction is that the taxpayer has to timely file a petition within 90 days of the final administrative determination. This is set out in Code Section 6015e. And the tax court has adopted a rule that confirms that the tax court has jurisdiction as long as those requirements were met. Now, could the IRS have, after all that happened and after it decided it wanted to honor the earlier, several stages earlier, grant, have simply administratively revoked its denial? It didn't do that, right? It did not do that. Could it have at that point just revoked its denial? Because the matter was in court and the tax court had jurisdiction over it, I think that would have been problematic. Well, if the Commissioner was dead set on mooting this case, I suppose one thing he could have done would be to abate the entire assessment, the joint liability for both parties. If that's the case. Well, he didn't want to do that. No, he didn't want to do that. We didn't do that. But could he have simply administratively negated the denial? That would have been the procedure to send it back to the agency, the administrative process. But, of course, the parties never requested that. Could it move for a remand? I mean, ordinarily in a the kind of administrative review we do, what happens is the agency moves for a remand to the agency. In a BIA case or in a Social Security case, that's what they would do. The parties could have sought that, they could have asked the tax court to do it, and the tax court could have ordered that. But none of those things happened. Would the tax court have been obligated to do that if both the Commissioner and the Petitioner here had come forward and said we think we've got this settled? No, Your Honor. The tax court, like any Federal court, has the discretion to dismiss a case. Could they have just settled the case? Could the Commissioner and Ms. Nunez have simply settled this? Not on their own, Your Honor. The Corson case that we've mentioned before has said that all concessions, including stipulated settlement agreements, are subject to the court's, the tax court's discretionary review and may be rejected in the interest of justice. The interest of justice being the other spouse? It could be the other spouse. It could be doubts that the tax court might have about the taxpayer's entitlement to relief. What is the status of the intervening spouse? Because this does look like a zero-sum game. If Ms. Nunez gets relief here, it looks like he's toast. And so it looks like he's got a real interest in saying, hey, she knew a lot about what was going on here, and she needs to be liable just like I am, and then we can argue it about it in some other forum, about our perspective. Yes, Your Honor, that's exactly right. The intervener, the nonrequesting spouse, does have a lot at stake here, because if she's granted relief, then he's the sole target for the IRS. But we've also had he doesn't have standing, which is bizarre, but that's what we've held. Well, yes. In the Beranowitz case, this Court did say that the interv... Because he's still, on a liability basis, no more or less liable than he was before. They still could have gone after him entirely if they wanted to. That's correct. And I'd say two things about that. One is that the intervener, the nonrequesting spouse, if he loses in tax court on this issue of innocent spouse relief, he might have trouble in a contribution action in state court to try to get the money back from his former spouse. So he does definitely have a big stake in this. And secondly, in Beranowitz, of course, the issue there was the standing of the intervener, if he loses in tax court, to appeal on his own to this Court. And that's not what's happening here at all. Here, the taxpayer was a petitioner in tax court, invoked the tax court's jurisdiction, and everyone concedes that. And then she lost, and so then she appealed. But does it make any difference that Beranowitz was after Corson? Yes. It seems like there's a tension there. I mean, to say that they can't settle without him, but he doesn't have independent standing. So why can't they settle without him? Well, the language about not settling without him is dicta, because it's not a question of what was happening in tax court. There's a question of did the intervener have the right to appeal on his own to the extended suit. I understand that, but I'm saying isn't there just an inconsistency with the notion that he doesn't have enough of an interest to appeal, so why does he have enough of an interest to hold the case up if the others want to settle it? Well, perhaps the confusion is about the fundamentals of standing, because you have to have standing to bring the suit. You have to have standing to appeal if you've lost below. But for an intervener such as the ex-husband here to participate in the tax court proceeding, he doesn't necessarily have to have standing. Well, that's true, but I understand that. But that you would think that it would be pertinent to the question of whether they could settle without him. I mean, if he's – I mean, there are lots of interveners in cases, but if two other parties want to settle, go settle. We don't hold them up. Well, the parties could have litigated that below, but they didn't. They didn't ask the tax court for that. Does the Commissioner have a position on whether Baranowicz is correctly decided? Baranowicz, Your Honor? Yeah. Your Honor, yes. I believe that the Commissioner has conceded that now. Well, I understand you have to concede it here, but you don't have to concede it in other circuits. You know, if there's a contrary rule in other circuits, I mean, it would be acquiescence here, but you don't have to acquiesce someplace else. I apologize, Your Honor. I don't know the specifics of that acquiescence, whether it's national or district. I guess a related question is, does your position in this case depend on Wilson? No. No, Your Honor. On the Genova Review holdings and Wilson? Not necessarily. I think it's supported by Wilson. Of course, we lost Wilson, but – It seems more like an ordinary administrative proceeding, which is, I gather, what Judge Bobby was arguing and just said, i.e., it was for abuse of discretion, then how, once the agency has decided it doesn't – it has a different position, again, why doesn't it just lead to an automatic remand? And if, in other words, if Wilson wasn't the law now, and instead it was an abuse of discretion review, and the agency was seen as primary and independent, then why, once the agency came in and said, you know, we want to give her her status, why doesn't the court just say, well, I don't have an independent role here, I'm going to remand back to you, do what you want? I mean, the court could certainly do that, but it would be up to the court to do it. That's key. It's the court that has jurisdiction. The court has authority to send it back. Here, the taxpayer is saying essentially that once the commissioner had announced this change of position, that all of a sudden the tax court's jurisdiction just went up poof in a cloud of smoke and everybody had to run out of the courtroom, that the tax court lost all authority to do anything. Let's take the language of jurisdiction out of here, because it's, I mean, it always gets in the way of logic. And so let's not talk about jurisdiction. Let's just say, you know, it was the proper thing for the tax court to do at that point, not because it lost jurisdiction, but because it's the right rule of law to send it back to the agency to reconsider, because that's what it said it was doing. The tax court certainly could have done that. However, in this case, there are good reasons not to, because the testimony of the witnesses convinced the tax court that the taxpayer did not meet the requirements for innocent spouse relief on the merits, that this tax liability was really But that means we are hinging a lot on Wilson. Pardon? Then we are hinging a lot on the Wilson concept. Not necessarily, Your Honor, because the – whether it's Dano forward view it's law of the circuit, but it seems to me you are sitting on it pretty hard. Well, I – Don't you have to? Because effectively, Wilson makes the tax court an independent agency that is above the commissioner. It owes no obligation to the commissioner, no deference, no chevron, no nothing. And it looks like the tax court is just sort of a different administrative agency. If you can get there, you've got Danovo review, Danovo scope of review. I take your point, Your Honor, and your dissent was very convincing to us. The problem is that the tax court is a judicial body. It is not simply an administrative agency that's making another level of administrative review. Well, we're a judicial body, too. But when the BIA, the Bureau of Immigration Appeals or the Social Security Commission comes to us and says, you know, we want to look at this again and we think that maybe we made a mistake, we, you know, almost always say, fine, go ahead, because we're only a secondary player here. You're the primary player. As a practical matter, that may well have happened here had there been no participation by the intervener, had there been no fact-finding, had there been no testimony of the witnesses, had the tax court not come to the conclusion based on the evidence that she was not entitled to relief, then that may well have happened and in all likelihood probably would have happened. But here it was a different, completely different situation. And even though the jurisdictional aspect of this is the puzzling part of it, it is the issue on which they're appealing. It's the only thing that they're bringing to this Court. They're not appealing the merits or anything else. And it is clear that the tax court did retain jurisdiction. Quick question. How often does this scenario come up in your experience where we have the both parties agreeing this is a result and yet the Court goes the other way and now it's on appeal? It's certainly unusual, Your Honor. I have no previous experience in a case like this. And there may well have been facts particular in this circumstance which are unlikely to be repeated. Thank you. Okay. Thank you very much. It's an interesting puzzle. We'll give you a minute in rebuttal. I would like to quickly. I'm sorry. Go ahead. I would like to quickly address your, Judge Bybee's question. Because at an administrative level, the intervener has a right to come in, has a right to make the argument. If relief is granted, no one appeals. The government doesn't appeal. The intervener has no right of appeal. Only. And that's the result of our Baramowicz case. I'm sorry? That's the result of a consequence of our Baramowicz decision. Is that right? No. This is at administrative. This is what occurs at administrative. It has nothing to do with. Statutory, essentially. Yeah. And the other, in response to Judge Owen's question, I'd like to point out, this is a low-income taxpayer claim. The taxpayers were unrepresented. The counsel lawyer was an inexperienced lawyer. And it is an unusual case. It happens quite frequently. And because the counsel lawyers hate cases when the interveners come in and they are inclined to grant relief, but they don't know how to go about doing it. And it does happen with great regularity. But they don't have a procedure, as I suggested, for simply filing a joint motion to dismiss the case. Who doesn't have a procedure? The counsel. Chief counsel's office. You mean the IRS? The IRS. The chief counsel's office is the office that has all the lawyers that represent the Internal Revenue Service in all tax court proceedings. And they don't have a procedure for dismissing such a case. They're lawyers. If you want to dismiss a case, you make a motion to dismiss a case. Only if they have something in their manual that tells them that's what they're supposed to do. Thank you very much for your time. Okay. Thank you very much. The case of Nunez v. Commissioner of Maternal Revenue is submitted. And we will take a short break. All rise. This court stands at recess.
judges: Berzon, Bybee, Owens